**NOTTINGHAM PARTNERS, et al.,**
**Plaintiffs, Appellants,**

v.

**TRANS–LUX CORPORATION, et al.,**
**Defendants, Appellees.**

**No. 90–1859.**

United States Court of Appeals,
First Circuit.

Heard Jan. 7, 1991.

Decided Feb. 7, 1991.

**30**

Carolyn Grace, with whom Michelle H. Blauner, and Shapiro, Grace & Haber were on brief, Boston, Mass., for plaintiffs, appellants.

John B. Sherman, with whom Weisman, Celler, Spett & Modlin, New York City, Grover S. Parnell, Jr., and Davis, Malm & D'Agostine were on brief, Boston, Mass., for defendants, appellees.

Before SELYA, Circuit Judge,
ALDRICH and BOWNES, Senior Circuit Judges.

SELYA, Circuit Judge.

Nottingham Partners and Deerfield Partners, plaintiffs below, invoking federal question jurisdiction, 28 U.S.C. § 1331, brought suit for securities law violations allegedly committed by Trans–Lux Corporation and its directors. After a parade of intervening events, the United States District Court for the District of Massachusetts ruled that the defendants were entitled to summary judgment because the plaintiffs' claims were extinguished at the time a shareholders' class action was resolved in the Delaware courts. Sparing little in the way of impassioned rhetoric, plaintiffs appeal. We affirm.

## I. STATEMENT OF THE CASE

In March 1986, Trans–Lux issued a proxy statement whereby it sought, amongst other things, to set the stage for a shareholder vote on a recapitalization plan and various amendments to its certificate of incorporation. The measures were of the genre known as "shark repellents," designed to make a hostile takeover more difficult. They were approved at the 1986 annual meeting. Shortly thereafter, Trans–Lux announced the sale of twenty-four movie theatres for $15,000,000.

Two years passed before plaintiffs filed the instant action. Their complaint sought money damages as well as equitable redress. In it, they charged that the defendants had violated the Securities Exchange Act of 1934, 15 U.S.C. § 78n, and Rule 14a–9 promulgated thereunder, as well as state statutory and common law, by not disclosing to shareholders, when the vote on the recapitalization plan and certificate amendments was in prospect, the ongoing negotiations for the cinema sale. The tally probably would have been reversed, appellants theorized, had the shareholders known of the negotiations and realized just how attractive a takeover target Trans–Lux might be, given the ready cash that could so easily be generated.

Within a few weeks, a Trans–Lux shareholder, George W. Dana, filed a class action in the Delaware Chancery Court. The suit asserted myriad violations of state law

(including disclosure shortcomings in the March 1986 proxy statement) relating to the certificate amendments and recapitalization plan. In due season, an accord was reached. Notice of the proposed settlement was sent to all prospective class members, appellants included. At the ensuing hearing, held on August 4, 1988, appellants appeared and objected vehemently to the proposed settlement. The court nevertheless certified the class,[1] approved the pact virtually in toto, overruled appellants' objections, refused to allow appellants to opt out of the class, and entered a comprehensive final decree. The court-approved settlement did not require the payment of damages to the shareholders. Rather, it provided for annulment of the certificate amendments and mandated other changes in the governance of the corporation. Part of the settlement, incorporated in the decree, purported to release all claims, by whomsoever brought, that "have been, could have been, or in the future might have been asserted" against Trans–Lux or its directors "in connection with or that arise now or hereafter out of" any matters or transactions referred to in the complaint or the settlement documentation.

Appellants prosecuted an appeal to the Delaware Supreme Court. In a long and erudite opinion, the court rebuffed each of appellants' asseverations. *See Nottingham Partners v. Dana*, 564 A.2d 1089 (Del.1989). The court held in substance that (1) inasmuch as Dana's action was primarily equitable in nature, class certification was available despite the "incidental" claim for monetary relief, *id.* at 1094–97; (2) the appellants were lawfully denied egress from the class, *id.* at 1097–1101; (3) the class settlement was, as the vice chancellor had found, fair, reasonable and adequate, *id.* at 1101–04; and (4) because appellants' federal law claims arose out of the same nucleus of operative fact as the claims prosecuted in *Dana*, the vice chancellor possessed, and appropriately exercised, the power to approve a release that included those claims within its ambit, *id.* at 1105–07. Lack of jurisdictional competency—the fact that a Delaware state court could not have gained subject matter jurisdiction over appellants' federal securities law claims—did not bar the inclusion of those claims within the sweep of the release. *Id.* at 1104–05.

After the state supreme court ruled, Trans–Lux and its directors moved for summary judgment in the federal district court. They argued that the *Dana* release, incorporated in the Delaware decree, barred further proceedings below. The district court agreed, spurning appellants' contention that a state court settlement was, almost by definition, impuissant to work a release of exclusively federal claims. Finding that the challenged release validly encompassed the federal claims, and that the latter were rooted in the same transaction as the claims settled and released in *Dana*, the court allowed defendants' motion. This appeal ensued.

The jurisprudence of Rule 56 requires that we afford the judgment below plenary review. *See, e.g., Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990); *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). At this stage of the case, however, the parties are in rather close agreement as to the pertinent facts. Hence, we need not comb through the usual haystack in search of a factual needle which is arguably "genuine" and "material." *See, e.g., Garside*, 895 F.2d at 48 (discussing summary judgment standard). The current dispute centers primarily on matters of law, to which we turn without further ado.

## II. ANALYSIS

### A.

■■ It is beyond cavil that a suit can be barred by the earlier settlement of another suit in either of two ways: res judica-

---

1. The class comprised all persons holding Trans–Lux stock at any time during the period from March 21, 1986 (the record date for the 1986 annual meeting) through June 21, 1988. The present appellants indisputably fit within these confines. The class was certified pursuant to Delaware Chancery Court Rule 23(b)(2), which is modelled on, and materially identical to, Fed.R.Civ.P. 23(b)(2).

ta or release. *See Seagoing Uniform Corp. v. Texaco, Inc.*, 705 F.Supp. 918, 920–24 (S.D.N.Y.1989). The defenses are separate and distinct. *Cf., e.g.,* Fed.R. Civ.P. 8(c) (enumerating affirmative defenses). Unhappy with the district court's map of the case's topography, appellants strive mightily to transmogrify this appeal into an exploration of res judicata (claim preclusion) rather than release and issue preclusion. Their expedition, we suggest, is misguided: the body of claim preclusion law lies well beyond the case's proper compass. The release contained in the *Dana* settlement, by its terms, met all the criteria necessary to engage the gears of the release defense for purposes of this suit: it (1) applied to appellants, (2) encompassed the claims asserted below, and (3) was legally enforceable. Since further prosecution of appellants' federal suit is foreclosed by the release defense, *see infra,* it would be pointless to discuss at any length whether their action is also claim-precluded.

■ Notwithstanding the foregoing, we feel some compulsion to address appellants' somewhat startling attempt to merge the doctrines of res judicata and release by asserting, without meaningful citation to authority, that since Nottingham and Deerfield were not named representatives in the class action, and did not consent to the release, then the release cannot have an effect against them which is greater than the res judicata effect of the judgment in which the release was embedded. This argument misconceives the very nature of a Rule 23(b)(2) class action. Once the class action court, affording the process that is due, determines that an objecting party will not be allowed to opt out of a Rule 23(b)(2) class, the objector becomes subject to a resulting settlement, including any release granted therein, to the same extent as any designated class representative or consenting class member.

### B.

■ Appellants do not dispute that the Delaware courts lawfully defined a class within whose definitional parameters they fall. The rest follows inexorably. Appellants received notice of the Delaware proceedings. They were given, and vigorously exercised, a constitutionally adequate opportunity to be heard. They litigated, and lost on, the issues which we have mentioned: that the settlement would extend class-wide; that it was fair; and that appellants could not opt out of it. *See Dana,* 564 A.2d at 1094–1104. The appellants thus became collaterally estopped from relitigating these issues in the federal courts. The defense of release was, therefore, fully applicable.

■ The legal principle is straightforward. It is black letter law that collateral estoppel can apply to preclude the relitigation in federal court of issues previously determined in state court. *See Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). In ascertaining whether issue preclusion flows as a consequence of previous state court litigation, a federal court must look to state law. *See id.* at 96, 101 S.Ct. at 415; *Roy v. City of Augusta,* 712 F.2d 1517, 1520 (1st Cir. 1983); *General Foods Corp. v. Massachusetts Dept. of Public Health,* 648 F.2d 784, 786–87 (1st Cir.1981). Delaware follows the usual praxis: under Delaware law a judgment in one case is conclusive in a subsequent (and different) case as to a question of fact actually litigated by the parties and determined in the first action. *See E.B.R. Corp. v. PSL Air Lease Corp.,* 313 A.2d 893, 894 (Del.1973); *see also Winkler v. Balentine,* 254 A.2d 849, 851 (Del.1969). Thus, appellants are collaterally estopped from arguing here, contrary to what the Delaware courts found, that they are outside the terms of the decree or that the settlement was unfair or inadequate.

### C.

■ Despite the plain existence of issue preclusion, appellants attempt, through various doctrinal and pedagogical manipulations, to have us review the propriety of the class certification and their inclusion in the class. We have two responses. The short of it is that we must give full faith and credit to what the Delaware courts have lawfully found and ordered, *see* 28

U.S.C. § 1738 (1988), and we intend to do so. The slightly longer answer, leading to precisely the same result, is that a court-approved settlement containing a release may be applied against a class member who is not a representative member, even if that member objects to the settlement, so long as acceptable procedural safeguards have been employed.[2] *See, e.g., TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir.1982); *Richard's Lumber & Supply Co. v. United States Gypsum Co.*, 545 F.2d 18, 21 (7th Cir.1976), *cert. denied*, 430 U.S. 915, 97 S.Ct. 1326, 51 L.Ed.2d 593 (1977).

The Delaware courts, affording all the prophylaxis which the Due Process Clause commands, adjudicated the question of whether appellants had a right, or should have been allowed, to opt out of the settlement. If, having objected and been overruled, appellants were still dissatisfied with the Delaware judgment, their recourse was to the United States Supreme Court by means of certiorari, not to the lower federal courts in the vain pursuit of back-door relief.

### D.

■ Appellants' attempt to cast doubt on what was earlier released fares no better. There can be no serious question but that the claims pressed in this action fell well within the language of the general release.[3] The Delaware Supreme Court, applying federal law, explicitly found that the claims here asserted arose out of the same transaction as the claims in the class ac-

tion, *see Dana*, 564 A.2d at 1105–07, and this determination is equally entitled to preclusive effect. That the complaint in this case emphasized federal disclosure laws whereas *Dana* placed its emphasis on state fiduciary concepts is beside any relevant point. The two suits, notwithstanding any differences in remedies sought or theories of recovery pleaded, shared a common gravamen. In sum, the instant case bore a sufficiently close relation to the *Dana* complaint to come within the plain language of the general release formulated as part of the *Dana* settlement. *See TBK Partners*, 675 F.2d at 461.

### E.

■ Appellants also question the validity of the release. While advancing no plea of generic infirmity—they do not contend that the release was, say, obtained through fraud or under duress—they urge that the release could not legitimately extend to the claims mounted in this suit. For our part, however, we believe the release is valid.

Appellants assert that, state law notwithstanding, a state court cannot approve a settlement that has the effect of releasing federal claims—claims which, as a matter of jurisdictional competency, could not themselves have been brought in the state court. Since the federal securities claims could only be litigated in a federal court, *see* 15 U.S.C. § 78aa, appellants hypothesize that those claims, come what may, could not be barred by a state court settlement.[4] We consider this argument to be jejune.

---

2. In their brief, appellants heatedly dispute this proposition—but the cases which they cite for a contrary rule do not withstand the mildest scrutiny. Without exception, those cases hold that, in the class action milieu, representative plaintiffs cannot release, on their own initiative, the claims of other class members. *See, e.g., Anisfeld v. Cantor Fitzgerald & Co.*, 631 F.Supp. 1461 (S.D.N.Y.1986); *Korn v. Franchard Corp.*, 388 F.Supp. 1326 (S.D.N.Y.1975). Such a situation is totally different than the situation at hand, where the release bears the imprimatur of the court. We not only find appellants' reliance on the cited cases to be misplaced but regard their out-of-context use of quotations from the caselaw to be wholly disingenuous.

3. The generality of the release's phrasing is of no moment. Under Delaware law, even a provision that releases "any matter related to any of the acts or transactions described in the complaints in the said actions" will not be struck down as too general. *See Rutman v. Kaminsky*, 226 A.2d 122, 126 (Del.1967). In other words, breadth is not a problem.

4. We note in passing that the only part of the proposed settlement not approved by the Delaware courts was the suggestion that the vice chancellor enjoin continued prosecution of the appellants' federal suit. *See Dana*, 564 A.2d at 1094, 1104. The court's rationale was that although the scope and terms of the release were

To be sure, a release that is sufficient as a matter of state law must also pass muster under federal law if it is to be used to bar federal statutory claims. *See Locafrance U.S. Corp. v. Intermodal Systems Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir.1977); *Griswold v. E.F. Hutton & Co.*, 622 F.Supp. 1397, 1404 (N.D.Ill.1985). But as a general matter, federal courts recognize that a court can approve a settlement agreement embodying terms which the court would ordinarily have no power to promulgate. *See, e.g., In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir.1981) (federal court can approve a settlement releasing state claims not before it), *cert. denied*, 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982); *In re Washington Public Power Supply Sys. Sec. Litig.*, 720 F.Supp. 1379, 1413 (D.Ariz. 1989) (similar); *cf. National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 18 & n. 7 (2d Cir.1981) (where class was authorized to represent members only with respect to "liquidated" contracts, settlement could not release "unliquidated" contract claims).

Hence, as a matter of federal law, a state court can approve and enforce a settlement which requires a party to release claims actually brought, or potentially "bringable," in federal court under "exclusive jurisdiction" federal statutes even though the state court could not adjudicate claims arising under such statutes. *See TBK Partners*, 675 F.2d at 460; *Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759, 762 (2d Cir.1968); *Seagoing*, 705 F.Supp. at 923. And where, as here, the federal law claims to be released stemmed from the same nucleus of operative fact as the state law claims, the release could legitimately be used as a defense to the former in a federal venue. *See TBK Partners*, 675 F.2d at 460. Moreover, since the Delaware class action settlement could release federal claims over which the state court had no jurisdiction, i.e., claims which would not be barred by the res judicata effect of the judgment containing the release, *see* Restatement (Second) of Judgments § 26(1)(c) (1982); *Mells v. Billops*, 482 A.2d 759, 761 (Del.Super.Ct.1984), the effect of the release was not circumscribed by the doctrine of res judicata. *See Richard's Lumber*, 545 F.2d at 21.

For these reasons, the release embedded in the Delaware judgment was, as the district court ruled, valid and enforceable as a matter of federal, as well as state, law.

### III. CONCLUSION

We need go no further. All the elements of a successful defense of release were present in this situation. Unless the defense is to be written off as some vestigial remnant of an abandoned jurisprudence—and we think any such suggestion fanciful—the appellees were fully entitled to summary judgment.[5]

*Affirmed.*

---

properly to be determined in the state court class action, "the effect of the Settlement and the release on Nottingham's federal litigation was ultimately for the Massachusetts federal court to decide." *Id.* at 1094. We agree.

5. Appellees ask that we levy sanctions pursuant to Fed.R.App.P. 38 and 28 U.S.C. § 1927 (1988). While appellants have been frustratingly recalcitrant in continuing to press their case, we think that, affording the benefit of the doubt, their appeal was most likely motivated by an argument for the extension, or even the reformulation, of existing law which, while wrong, was not altogether delusional. Mindful of the novelty of the facts, if not the law, we conclude that appellants' conduct does not require the imposition of sanctions.