USCA1 Opinion

 

 D e c e m b e r 2 4 , 1 9 9 6 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1357 CITY PARTNERSHIP COMPANY, A NEW YORK GENERAL PARTNERSHIP, ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED, ETC., ET AL., Plaintiffs, Appellees, v. ATLANTIC ACQUISITION LIMITED PARTNERSHIP, A MASSACHUSETTS LIMITED PARTNERSHIP, ETC., ET AL., Defendants, Appellees, ____________________ THOMAS P. GORMAN, JOHN CARLSON, ANDREW N. BECKER, BARRONIAN-IRA ROLLOVER, RICHARD AND EMILY BARRONIAN,  HAROLD E. AND WANJA M. BIRKEY, MARVIN W. AND CHARLOTTE L. GREENUP, ESTATE OF ROBERT AND DOLORAS HANSON, JOHNNY'S SEAFOOD COMPANY, PROFIT SHARING TRUST, GRAY LUMBER COMPANY PROFIT SHARING TRUST, BARBARA ENGLE, JAMES P. DUFFY, H.C. HARNED, RICHARD HODSON AND MARCELLA LEVY. Intervenors, Appellants. ____________________ The published opinion of this Court issued on November 26, 1996, is amended as follows: Page 3, last line: delete the underscore at "inter alia." Page 7, second full paragraph, line 1: Delete "Atlantic's" and insert "Intervenors'" in its place. UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1357 CITY PARTNERSHIP COMPANY, A NEW YORK GENERAL PARTNERSHIP, ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED, ETC., ET AL., Plaintiffs, Appellees, v. ATLANTIC ACQUISITION LIMITED PARTNERSHIP, A MASSACHUSETTS LIMITED PARTNERSHIP, ETC., ET AL., Defendants, Appellees, ____________________ THOMAS P. GORMAN, JOHN CARLSON, ANDREW N. BECKER, BARRONIAN-IRA ROLLOVER, RICHARD AND EMILY BARRONIAN, HAROLD E. AND WANJA M. BIRKEY, MARVIN W. AND CHARLOTTE L. GREENUP, ESTATE OF ROBERT AND DOLORAS HANSON, JOHNNY'S SEAFOOD COMPANY PROFIT SHARING TRUST, GRAY LUMBER COMPANY PROFIT SHARING TRUST, BARBARA ENGLE, JAMES P. DUFFY, H.C. HARNED, RICHARD HODSON, AND MARCELLA LEVY. Intervenors, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Patti B. Saris, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge,  ___________ Coffin and Campbell, Senior Circuit Judges. _____________________ ____________________ Glen DeValerio, with whom Harry A. Garfield, II, Kimberly Masters ______________ _____________________ ________________ Gaines, Berman, DeValerio & Pease and Harold B. Obstfeld were on brief ______ _________________________ __________________ for plaintiff, appellees. Deborah L. Thaxter, P.C., with whom Gregory P. Deschenes, ___________________________ _______________________ Christopher R. Goddu and Peabody & Brown were on brief for defendants, ____________________ _______________ appellees. Robert W. Powell, with whom Carl D. Liggio, Michael S. Poulos, _________________ _______________ _________________ Robert W. Powell, Dickinson, Wright, Moon, VanDusen & Freeman, Thomas ________________ ____________________________________________ ______ G. Shapiro, Edward F. Haber, Shapiro, Grace, Haber & Urmy, Edward ___________ ________________ ______________________________ ______ Heboton, Lynda J. Grant and Goodkind, Labaton, Rudsoff & Suckarow LLP, _______ ______________ _________________________________________ were on brief for intervenors, appellants. ____________________ November 26, 1996 ____________________ CAMPBELL, Senior Circuit Judge. Plaintiffs, _______________________ Intervenors Thomas Gorman, et al., ("Intervenors") appeal from the district court's approval of a settlement of a class action against Atlantic Acquisition Limited Partnership ("Atlantic"), the general partner in a series of limited partnerships. The Intervenors allege that the settlement is not fair, reasonable or adequate. I. Procedural and Factual History I. Procedural and Factual History Atlantic is the general partner in twenty-one limited partnerships, each of which was established to purchase and lease capital equipment such as aircraft, ships and construction machinery. On August 18, 1995, Atlantic made essentially identical tender offers ("the tender offer") to the limited partners in each of the partnerships, offering to purchase up to 45% of the outstanding units of limited partnership interest for a total price of approximately $22 million. The tender offer was to be financed by an outside lender with a loan secured in part by Atlantic's general partners' personal guarantees and in part by a security interest in all the units tendered. On September 6, 1995, City Partnership Co. ("City"), a limited partner in three of the partnerships, filed the class action suit below on behalf of all the limited partners of the twenty-one partnerships against -4- Atlantic alleging, inter alia, that Atlantic had made material misrepresentations in the disclosure statement accompanying the tender offer, and that it had breached its fiduciary duty to the limited partners by not arranging for the loan to be made to the partnerships and limited partners directly. Because of the limited duration of the tender offer and the possibility that the financing would expire, the plaintiffs obtained expedited discovery and began negotiating with Atlantic. The Intervenors participated in the settlement negotiations and had access to all the discovery. Within a few weeks, the plaintiffs and Atlantic reached an agreement and filed a Stipulation of Settlement on September 27, 1995. The settlement agreement provided that Atlantic would limit its tender offer to 35% of the outstanding units,1 would furnish significant additional disclosures and would increase the tender offer price by almost 7%, a maximum premium over the initial offer of $1.5 million. In return, City granted Atlantic a broad release of all claims pertaining to the tender offer, actual and potential, direct and derivative.  ____________________ 1. No more than 15% of the units of any one partnership were actually tendered. City did not tender its units. -5- On October 3, 1995, notice of the settlement was sent out to all the class members, a group of over 31,000. The Intervenors moved to intervene for the sole purpose of objecting to the settlement on the ground that it contained a release of the partnerships' claims against Atlantic for appropriating a partnership opportunity for itself (the "derivative claims").2 The Intervenors argue that the release of the derivative claims was obtained in exchange for little or no consideration. Despite the Intervenors' objections, the district court approved the settlement, and the Intervenors brought this appeal, arguing that the settlement was not fair, adequate or reasonable insofar as it approved the release of  the derivative claims. II. Discussion II. Discussion A district court can approve a class action settlement only if it is fair, adequate and reasonable. Durrett v. Housing Authority of the City of Providence, 896 _______ _____________________________________________ F.2d 600, 604 (1st Cir. 1990). When sufficient discovery has  ____________________ 2. According to both City and the Intervenors, the partnership units were worth far more than the tender offer price. Atlantic thus had the potential to profit greatly from its offer to buy the limited partners' units, depending on the number of units actually tendered. The Intervenors claim that any such profit really belongs to the limited partnerships themselves and wish to pursue the partnerships' claims against Atlantic in a derivative suit, suing on the partnerships' behalf. -6- been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement. See ___ United States v. Cannons Engineering Corp., 720 F. Supp. ______________ __________________________ 1027, 1036 (D. Mass. 1989) (quoting City of New York v. __________________ Exxon, 697 F. Supp. 677, 692 (S.D.N.Y. 1988)), aff'd, 899 _____ _____ F.2d 79 (1st Cir. 1990).  Upon review, our role, "is not to decide whose assertions are correct, but merely to ascertain whether the district court clearly abused its discretion in approving the settlement." Greenspun v. Bogan, 492 F.2d 375, 381 (1st Cir. _________ _____ 1974). Great deference is given to the trial court. "It is only when one side is so obviously correct in its assertions of law and fact that it would be clearly unreasonable to require it to compromise to the extent of the settlement, that to approve the settlement would be an abuse of discretion." Id. Despite the deferential standard of ___ review, the Intervenors argue that we should overturn the district court's approval of the settlement because City released claims which it did not raise in its complaint and because City was faced with a conflict of interest.  The first argument is easily dispensed with. It is well-settled that "in order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual -7- predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action." TBK Partners, _____________ Ltd. v. Western Union Corp., 675 F.2d 456, 460 (2d Cir. ____ ____________________ 1982). See also Matsushita Electric Industrial Co. v. _________ ____________________________________ Epstein, __ U.S. __, 116 S. Ct. 873, 879 (1996) (discussing _______ Delaware law); Nottingham Partners v. Trans-Lux Corp., 925 ___________________ ________________ F.2d 29, 33-34 (1st Cir. 1991); Class Plaintiffs v. City of ________________ _______ Seattle, 955 F.2d 1268, 1287-88 (9th Cir. 1992), cert. _______ _____ denied, 506 U.S. 953 (1992). ______ There is some dispute as to whether or not City did in fact bring the derivative claims in its class action suit. But regardless of whether it did or not, the derivative claims clearly arose from the same factual predicate as City's claims alleging misrepresentations and omissions in Atlantic's disclosure statements and breaches of Atlantic's fiduciary duties to the limited partners. All of these claims stemmed from problems with the tender offers and were releasable by the class action settlement. Intervenor's second argument, alleging a conflict of interest, is potentially more troublesome. The presence of a conflict of interest would render the settlement suspect. As the Ninth Circuit has written, "If, however, the settlement negotiations are biased, or skewed by a conflict of interest, we cannot presume that the attorneys have -8- reached a fair settlement." In re Pacific Enterprises ____________________________ Securities Litigation, 47 F.3d 373, 378 (9th Cir. 1995).  _____________________ Other courts have recognized a potential for a conflict of interest in situations somewhat analogous to this. In Pacific Enterprises, for example, the Ninth Circuit ___________________ reviewed a district court's approval of a simultaneous settlement of both a derivative class action lawsuit and a securities class action lawsuit. The court questioned the wisdom of allowing one party to represent both derivative and securities class action plaintiffs. It pointed to the corporate officer defendants' incentive in such situations to trade a larger securities settlement for lower derivative liability, thereby sparing themselves at the corporation's expense.  The potential conflict problem here is not the same as that in Pacific Enterprises. If there was a conflict, it ___________________ arose from a difference in interest between those unitholders who would accept Atlantic's newly-sweetened offer and those who would choose to stay on as limited partners. The purpose of the class action was to force Atlantic to improve its tender offer by, inter alia, raising its price. Those who accepted the offer by selling their units benefited from the enhanced price. Those who remained limited partners--the tender offer being limited to 35% of all units--did not so benefit and lost out on whatever rewards a successful -9- derivative suit might have conferred upon all unitholders, the possibility of a derivative suit having been surrendered in the settlement. It follows that there may be although we do not decide, infra a conflict of interest should one party _____ like City represent both tender offer and derivative claims.3 If such a party wished to tender its partnership units, it might have an incentive to offer to trade a lower derivative recovery for a higher offer price because once it sold its units it would no longer benefit from the derivative recovery. Similarly, if such a party did not wish to tender, it would have an incentive to trade a lower offer price for a higher derivative recovery. However, in order for there to be a meaningful conflict of interest in the representation of derivative and tender offer claims, there would first have to be derivative claims of substance. In this case, the district court approved the settlement only after considering arguments over whether or not the derivative claims had any  ____________________ 3. The question of whether this situation would present a conflict of interest is not an easy one. If, for example, the limited partners had tendered more than the 35% of the units that Atlantic had agreed to buy, the owners' shares would have been purchased on a pro rata basis. Since no partner would then be able to sell all her shares, some incentive to preserve the retained shares' value by pursuing the derivative claims might well remain. Because of the potentially ad hoc nature of the conflict determination, we prefer not to attempt to formulate at this time hard and fast rules requiring separate representation of tender offer and derivative claims in a class action.  -10- value, and did so in circumstances where the derivative claims were championed by an independent party, the Intervenors.  Although City submitted an expert's affidavit stating that the derivative claims were worthless, the district court did not rely on City's advocacy alone in making its decision. The Intervenors, who represented only the derivative claims, vigorously argued that the derivative claims had value and submitted their own expert's affidavit as support. The court examined both affidavits before ruling. Thus for the purposes of making this threshold decision, the two sets of claims were each represented by a different party. The Intervenors' participation eliminated the risk that a conflict problem would skew the presentation of the valuation issues and the court's holding is therefore subject to the usual abuse of discretion standard of review for approval of class action settlements. See Greenspun, 492 ___ _________ F.2d at 381. We do not believe the district court abused its discretion in approving the settlement and, by implication, determining that the derivative claims were of little, if any, value.4 The essence of the derivative claims was that  ____________________ 4. At oral argument, counsel for the Intervenors pointed out that the district court did not explicitly find that the derivative claims were worthless. However, the court's approval of a settlement which, the Intervenors agree, provided for a release of the derivative claims in exchange -11- Atlantic had coopted a partnership opportunity by making the tender offer on its own behalf instead of the partnerships'. The value of this claim is entirely dependent on the partnerships' ability to make the tender offer themselves, and City's expert's affidavit explained that the partnerships were unable to do so. First, the partnership agreements prohibited the partnerships from buying partnership units. Removing this restriction would have required the approval of the owners of a majority of the units. Such approval might not have been forthcoming and would at least have been difficult and expensive to obtain. Also, even if the majority ownership of each partnership agreed, the result would have been to coerce the dissenting minority to participate in the making of the tender offer. By making the tender offer itself, Atlantic avoided this possibility; only those unitholders who desired to tender their shares participated in the tender offer in any way. City's expert also stated in his affidavit that the partnerships could not have obtained the necessary outside loans to finance the tender offer. The loan desired by each individual partnership would be too small to attract the  ____________________ for no consideration after the court's examination of affidavits exclusively devoted to debating the derivative claims' worth indicates that the court resolved the issue of the claims' value against the Intervenors. -12- interest of the sort of financial institution typically involved in this type of transaction. In addition, potential lenders would have been much less willing to participate in a loan to the partnerships without a cross-collateralization agreement, something prohibited by the partnership agreements without the approval of the owners of a majority of the units.5 Moreover, the partnerships lacked the sort of developed credit history which Atlantic had, making the securing of a loan more difficult, and could not have supplied the personal guarantees made by the general partners. The Intervenors' expert believed the partnerships could have obtained financing for the tender offer by forming a joint venture or by creating a new limited partnership. The purpose of establishing either would be to overcome the problems of small loan size and inability to form a cross- collateralization agreement. The expert also thought it  ____________________ 5. Atlantic was able to provide a security interest in the tendered units from all of the partnerships as collateral for the loan. If a partnership's tendered units failed to generate sufficient income to pay off that partnership's proportionate share of the loan, the lender could use excess income from the other partnerships' tendered units to cover the shortfall. However, if each partnership obtained its own loan to make a tender offer for its own units, the lender would be unable to seek such coverage payments from the units of other partnerships and would thus bear a greater risk of loss. The lender could eliminate this risk only by persuading the partnerships to enter into a cross- collateralization agreement specifically authorizing such coverage payments. -13- would be possible for the partnerships to interest a lender in financing the tender offers individually, despite the small loan size, if all the loans were arranged at once. City's expert submitted a rebuttal affidavit in which he explained why these schemes were not feasible. He wrote that the administrative expenses involved in creating a joint venture of the twenty-one limited partnerships would be prohibitive and that creating a new limited partnership to make the tender offers would be "completely unworkable and uneconomical." He also reiterated that no lender would be interested in making loans of the size required for each partnership individually, even if all the loan requests were processed at once. Considering the evidence, we think the district court was justified in holding that the partnerships could not have made the tender offers and that the derivative claims therefore had no value. Once this determination had been made City's potential conflict of interest dissipated, and its ability to represent the interests of the entire class of limited partners ceased to be impaired in any way. Affirmed. _________ -14-