STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER DOCKET
DOCKET NO. BCD-CIV-2021-25

BRYAN MILWOOD d/b/a               )
MILWOOD BUSINESS                  )
ENTERPRISE,                       )
                                  )
          Plaintiff,              )
                                  )        **ORDER GRANTING DEFENDANT'S**
     v.                           )        **MOTION FOR SUMMARY JUDGMENT**
                                  )
CAMDEN NATIONAL BANK,             )
                                  )
          Defendant.              )

INTRODUCTION

In this case, a member of a prior class action settlement regarding bank fees seeks to institute a new class action against the same defendant over related fees. The matter presently before the Court is Defendant Camden National Bank's ("CNB") motion for summary judgment under M.R. Civ. P. 56(b) on the sole count set forth in Plaintiff Bryan Milwood's amended class action complaint (the "Complaint"). The Court heard oral arguments on Thursday, August 26, 2021 in which both parties appeared through counsel. For the reasons discussed below, the Court GRANTS CNB's motion.

STANDARD OF REVIEW

Summary judgment is appropriate where the parties' statements of material fact and the portions of the record referenced therein "disclose no genuine issues of material fact and reveal that one party is entitled to judgment as a matter of law." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 11, 915 A.2d 400. "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact finder to choose between competing versions of the fact." *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d

1

774 (quotation omitted). To avoid summary judgment for the defendant on certain or all claims, a plaintiff must establish "a prima facie case for each element of the claim for which the plaintiff will bear the burden of proof at trial." *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 902 (Me. 1996). Consequently, a defendant's motion for summary judgment is properly granted if "the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

## FACTS

Plaintiff Bryan Milwood, on behalf of his company Milwood Business Enterprise (together, "Milwood"), opened a checking account ("MBE Account") with CNB on January 3, 2019. (Supp'g S.M.F. ¶ 1.) The MBE Account is the only deposit account Milwood opened or held at CNB, either individually or as a business entity. (*Id.*) On August 15, 2019, Milwood attempted to make a payment from his account via Automated Clearing House ("ACH"). (Pl.'s Compl. ¶ 15.) CNB returned payment of an ACH item due to insufficient funds and charged Milwood a $34.00 non-sufficient fund fee ("NSF Fee"). (*Id.* ¶ 16; Def.'s Ans. ¶ 16.) Six days later, on August 21, 2019, CNB again attempted to process the ACH item and charged Milwood another $34.00 NSF Fee. (Pl.'s Compl. ¶ 17; Def.'s Ans. ¶ 17.) In addition to the NSF Fees, Milwood also incurred fees in 2019 for payments that were not returned but which caused an overdraft in his account. ("OD Fees"). (Pl.'s Add'l S.M.F. ¶ 45). CNB closed the MBE Account in September 2019 after it had been overdrawn for 45 days. (Supp'g S.M.F. ¶ 2.) At the time the MBE Account was closed, it was overdrawn by $913.62, including both principal and all fees charged by CNB. (*Id.*; Opp. S.M.F. ¶ 2.) No further fees were assessed against Milwood after the MBE Account was closed. (Supp'g S.M.F. ¶ 3.)

On or about February 24, 2020, a putative class action complaint was filed in the Knox County Superior Court entitled *Norwood v. The Camden National Bank*, later transferred to the Business & Consumer Docket as Case No. BCDWB-CV-2020-13, which asserted claims related to fees charged by CNB to checking accounts with insufficient funds to cover purchases. (Supp'g S.M.F. ¶¶ 9-10.) On September 17, 2020, the parties involved in the *Norwood* action submitted a proposed class action settlement agreement pursuant to M. R. Civ. P. 23(e) ("Norwood Settlement"), seeking preliminary approval from this Court to proceed with the agreement and to direct notice to class members. (*Id.* ¶ 11.) This Court agreed and docketed the preliminary approval order on September 21, 2020. (*Id.* ¶ 12.) Under the terms of the Norwood Settlement, class members with "Charged-Off Accounts" (i.e., accounts closed with amounts still owed to CNB) were entitled to reductions in the balances owed to CNB based on the OD Fees charged by CNB to their accounts. (Supp'g S.M.F. ¶ 25; Add'l S.M.F. ¶¶ 49-50.)

Milwood was a member of the settlement class because he had a Charged-Off Account. (Supp'g S.M.F. ¶¶ 20, 25.) Notice of the Norwood Settlement was mailed to Milwood's business address on October 30, 2021 and was not returned as undeliverable. (*Id.* ¶ 22.) The notice informed Milwood of his right to opt out of, or object to, the Norwood Settlement, included the address for a website which contained the full text of the Norwood Settlement and FAQs, and explained that "[i]f the Court grants final approval of the settlement and you do not request to be excluded, you will release your right to bring any claim covered by the settlement." (Def.'s Reply to Add'l S.M.F. ¶ 48.) The notice and website FAQs advised class members that the Norwood Settlement involved claims arising from CNB "Overdraft Practices" related to "overdraft fees from January 1, 2014 to September 21, 2020." (Add'l S.M.F. ¶¶ 43-44; Reply to Add'l S.M.F. ¶¶ 43-44.) The full text of the Norwood Settlement, available on the same website as the FAQs, identified "Overdraft

Practices" as including the "assessment of fees (including overdraft-paid and overdraft-returned (NSF) fees)." (Reply to Add'l S.M.F. ¶ 44.)

After notice had been sent to class members and a 30-day period for such members to opt out of, or object to, the Norwood Settlement had elapsed, the Court held a remote hearing on December 11, 2020 on the subject of final approval of the agreement. (Supp'g S.M.F. ¶ 13.) No class members objected and only one, not the instant Plaintiff Milwood, opted out. (*Id.* ¶¶ 14, 24.) The Court approved the Norwood Settlement and docketed its order, along with a dismissal with prejudice of the underlying action, on December 15, 2020, finding the agreement and allocation plan for settlement funds to be "in all respects fair, reasonable, and adequate," and that "the Plaintiff and Class Counsel have adequately represented the Settlement Classes." (*Id.* ¶¶ 15-16, 18.) The Court also found that "the notice program constituted the best practicable notice to the Settlement Classes under the circumstances and fully satisfied the requirements of Rule 23 of the Maine Rules of Civil Procedure." (*Id.* ¶ 17.)

The Norwood Settlement explicitly defined "Overdraft Practices" as "the practices, policies and procedures related to [CNB's] authorization, processing, payment, payment order, posting, return and/or rejection of an item, . . . and assessment of fees (including overdraft-paid and overdraft-return (NSF) fees), when [CNB] determined an Account had insufficient funds to cover an item." (*Id.* ¶ 30.) The Norwood Settlement also contains a release (the "Release"), the terms of which provide in relevant part that settlement class members:

> shall automatically be deemed to have fully and irrevocably released and forever discharged [CNB]. . . of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected. . . that result from, arise out of, are based upon, or relate to the conduct, omissions, duties, or matters up to and including the date of Final Approval that were or could have been alleged in this Action by Plaintiff or by any other Settlement Class Member relating in any way to Overdraft Fees or Overdraft Practices, including. . . (i)

4

[CNB]'s practices, policies and procedures related to the authorization, processing, payment, payment order, and posting of an item when [CNB] determined an Account had insufficient funds to cover the item, and (ii) the calculation, assessment, imposition, amount or collection of fees on an Account when [CNB] determined the Account had insufficient funds to cover and item (including overdraft-paid fees).

(*Id.* ¶ 29.) The Norwood Settlement provided $1,200,000.00 in consideration to the settlement class plus $485,452.00 in "Overdraft Forgiveness. As a Norwood Settlement class member with a "Charged-Off Account," Milwood was entitled to and received a reduction in his outstanding balance in the amount of $168.91 based on the overdraft fee practices at issue in the Norwood Settlement. (*Id.* ¶¶ 25-25, Opp'g S.M.F. ¶¶ 25-26; Add'l S.M.F. ¶¶ 45, 49-51.)

Notwithstanding the Norwood Settlement, on or about February 10, 2021, Milwood filed the instant putative class action related to CNB's overdraft fee policies, followed by an amended complaint on March 1, 2021. (Supp'g S.M.F. ¶¶ 4-5.) The Complaint asserts one count of breach of contract and breach of the covenant of good faith and fair dealing based on CNB's alleged double charging of NSF Fees for attempting to draw on non-sufficient funds. (*Id.* ¶ 6.) Milwood asserts that the subject matter of the *Norwood* action did not include NSF Fees but rather related solely to CNB's fee practices regarding "authorize positive, settle negative" transactions, i.e. transactions which authorize a draw on an account with a positive balance but in doing so overdraft that account, and so-called phantom transactions in which the accountholder did not make a withdrawal request and the account balance was not reduced. (Add'l S.M.F. ¶¶ 36-39; Reply to Add'l S.M.F. ¶ 39.) CNB, however, points to the language of the Norwood Settlement and the Release therein, which explicitly include NSF fees as one type of overdraft fees. (Supp'g S.M.F. ¶ 17; Reply to Add'l S.M.F. ¶ 39.)

DISCUSSION

5

In 2020, the Maine Business & Consumer Docket approved a settlement agreement between CNB and a statewide class of its account holders which included Milwood. *See Norwood v. Camden National Bank*, Case No. BCD-CV-2020-13. In exchange for financial compensation and forgiveness of certain overdraft fees, the class consented to the Release contained within the Norwood Settlement, barring them from bringing claims that were or could have been alleged relating to CNB's overdraft practices during the relevant time period.

In the instant motion, CNB raises as an affirmative defense to Milwood's suit the preclusive effects of that Release. Milwood argues that, though he was indisputably a member of the class of *Norwood* plaintiffs to which the Release applies, the subject of his action, so-called NSF Fees, are qualitatively different from the overdraft fees at the core of the Norwood Settlement such that the Release cannot preclude his claim. Additionally, Milwood asks this Court to adopt the "identical factual predicate test" to determine whether his claim is barred by res judicata in lieu of evaluating the instant action under the terms of the Release. Milwood also argues that the Norwood Settlement approval was procedurally defective. This Court will examine these issues in turn.

## I. The Norwood Settlement Release is Sufficiently Broad to Encompass Milwood's Claim

Maine law both encourages settlements and recognizes the binding force of releases. *Norton v. Benjamin*, 220 A.2d 248, 251 (Me. 1966) (holding that the law recognizes benefits of finality and certainty provided by settlements); *Le Clair v. Wells*, 395 A.2d 452, 453 (Me. 1978) (holding that a valid release extinguishes a cause of action). For a release to be utilized as a defense, it must (i) apply to the plaintiff; (ii) be legally enforceable; and (iii) encompass the claims asserted. *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 32 (1st Cir. 1991).

6

Releases in class action settlements unambiguously apply to all members of the specified class, regardless of whether they affirmatively consented to the release or were representative members. *Id.* at 33. This is the reason a class action settlement requires court approval. M.R. Civ. P. 23(e); *Amchem Prod. v. Windsor*, 521 U.S. 591, 597, 117 S. Ct. 2231 (1997) ("[T]he Rule 23(e) inquiry protects unnamed class members from unjust or unfair settlements agreed to by fainthearted or self-interested class representatives.") There is no dispute that Milwood was a member of the class of plaintiffs in *Norwood* and that the Release applies to him and his business as he neither objected to, nor opted out of, the settlement. As will be discussed below, the enforceability of the settlement is a question of law which has already been conclusively addressed by this Court and is not now available for collateral attack. *See In re Diet Drugs Prods. Liab. Litig.,* 431 F.3d 141, 146 (3d Cir. 2005).

The Court nevertheless acknowledges that releases do not necessarily result in blanket preclusion of all tangentially related claims. In *Consol. Edison v. Northeast Utils.*, the court declined to extend a release, executed under a settlement agreement between two shareholders and a corporation regarding allegedly false and misleading statements in a joint proxy statement issued by the latter and a potential merger partner, to a different shareholder claim regarding a penalty fee for the failure of the merger. 332 F. Supp. 2d 639 (S.D.N.Y. 2004). The court interpreted the release as specific to the claim about the process of entering the prospective merger, meaning it was not broad enough to preclude the subsequent suit related to the merger's failure. *Id.* at 648. In *Scott v. Bimbo Bakeries United States, Inc.*, the court held that a release resulting from a suit over whether plaintiffs were properly characterized as independent contractors as opposed to employees could not be used to preclude a suit over alleged bad faith in contractual dealings and improper exercise of a right of first refusal because these are two essentially unrelated claims. No. 10-3154,

7

2015 U.S. Dist. LEXIS 167317, at *14 (E.D. Pa. Dec. 15, 2015). And in *Feller v. Transamerica Life Ins. Co.*, the court refused to construe a release in such a way that would void an insurance company's continuing obligations to its customers by encompassing claims based on future conduct because such construal would be so broad as to be unenforceable. No. 2:16-cv-01378-CAS (AJWx), 2016 U.S. Dist. LEXIS 155759, at *15-*16 (C.D. Cal. Nov. 8, 2016).

The relationship between the Norwood Settlement and Milwood's instant suit, however, can be distinguished from these cases. Unlike *Consol. Edison* and *Scott*, the subject matter of the Release is the same as in Milwood's claim: CNB's overdraft fee practices (explicitly defined by the Norwood Settlement to include both OD Fees and NSF Fees). And unlike *Feller*, Milwood's claim arises out of the same conduct as in *Norwood*, not post-release actions. Indeed, it is undisputed that Milwood's NSF Fee claims existed at the time the *Norwood* action was commenced and that CNB charged the relevant NSF Fees during the period to which the Release applies.

Milwood maintains that the subject matter of his suit is substantively different from that of the Norwood Settlement's Release. This Court must interpret the Norwood Settlement to determine whether NSF Fees fall under the umbrella of overdraft fees released. "If a release is 'absolute and unequivocal' in its terms, it '. . . must be construed according to the language that the parties have seen fit to use.'" *2301 Cong. Realty, LLC v. Wise Bus. Forms, Inc.*, 2014 ME 147, ¶ 10, 106 A.3d 1131 (quoting *Norton*, 220 A.2d at 253). Principles of contract law govern the interpretation of settlement agreements. *Hallissey v. School Admin. Dist. No. 77*, 2000 ME 143 ¶ 8, 755 A.2d 1068. The interpretation of unambiguous contract language is a question of law, which the Court may address on summary judgment, whereas the interpretation of ambiguous language is a question of fact, requiring determination by the finder of fact. *Compare Top of the Track*

8

*Assocs. v. Lewiston Raceways, Inc.*, 654 A.2d 1293, 1296 (Me. 1995) (contrasting legal interpretation of unambiguous terms with factual interpretation of parties' intent in contract to operate racetrack concession stand) *with Tondreau v. Sherwin-Williams Co.*, 638 A.2d 728, 730 (Me. 1994) (holding summary judgment inappropriate where the terms "wholesale" and "retail" are ambiguous as used in lease). Whether the contract language is ambiguous or unambiguous is itself a question of law. *Town of Lisbon v. Thayer Corp.*, 675 A.2d 514, 516 (Me. 1996). Ambiguity exists where the language is "reasonably susceptible to different interpretations." *Fitzgerald v. Gamester*, 658 A.2d 1065, 1069 (Me. 1995).

Milwood argues that the Norwood Settlement does not encompass his suit because it releases only claims involving "Overdraft Fees" which, Milwood contends, exclusively mean fees charged for overdrawing accounts, in contrast to the instant claim relating to NSF Fees charged to accounts already overdrawn. The Court finds the Release's language to be unambiguous—thus subject to interpretation as a matter of law—and is not persuaded by Milwood's contentions. The Norwood Settlement explicitly includes "overdraft-return (NSF) fees" in its definition of what "overdraft fees" embrace. (*See* Supp'g S.M.F. ¶ 30.) Milwood, in his opposition to CNB's motion, concedes that this fundamental language is included because the Release is designed to relinquish "claims regarding fees of any type *charged as a result of the challenged practices*." (Pl.'s Opp'n to Def.'s Mot. Summ. J. 5) (emphasis in original). This Court does not disagree. Contrary to Milwood's contentions, the "challenged practices" in *Norwood* were CNB's "Overdraft Practices" broadly writ, including NSF Fees.

Even were that not the case, accepting Milwood's view would require the Court to disregard the plain meaning of the word "overdraft" in the context of retail banking. Asserting that the term "overdraft fees" should not include NSF Fees, which are charged when an accountholder

9

*attempts* to overdraft an account and is denied, would be as pointless as declaring that a grocer's vegetable section should not include tomatoes, peppers, or avocados for being, botanically speaking, fruits. *See Nix v. Hedden*, 149 U.S. 304 (1893) (finding that, scientific classification notwithstanding, tomatoes are vegetables for the purposes of the Tariff Act of 1883 due to their commonly understood, plain meaning).

## II. This Court Declines to Adopt the Identical Factual Predicate Test

"It is beyond cavil that a suit can be barred by the earlier settlement of another suit in either of two ways: res judicata or release." *Nottingham Partners*, 925 F.2d at 31-32. Because these two defenses are "separate and distinct," a defendant need only prevail on one to preclude an action. *Id.* at 32. The Norwood Settlement's Release is controlling here, not res judicata principles. Milwood's argument that res judicata, or claim preclusion, supersedes the doctrine of release is unfounded in Maine law, as is his exhortation that the Court analyze the application of res judicata under the "identical factual predicate" test to determine the scope of the prior class action settlement's Release. First, Maine has not yet adopted this test and this Court declines to do so at this juncture.[1] Second, even if this Court were to adopt the "identical factual predicate" test, the result would be no different. Milwood's claim would still be barred both by the Release and under the doctrine of res judicata.

---

[1] The "identical factual predicate" test has been adopted in the Ninth and Eleventh Circuits. *See Williams v. Boeing Co.*, 517 F.3d 1120 (9th Cir. 2008); *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, 2005 U.S. Dist. LEXIS 48569 (C.D. Cal. Apr. 26, 2005); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005). Though the test has seen some limited use in the First Circuit, *see Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53 (1st Cir. 2004); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041 (1st Cir. 1996), neither Maine courts nor other New England state courts have yet seen fit to apply it. Milwood cites a treatise favoring the test, *see* WILLIAM B. RUBENSTEIN, 6 NEWBERG ON CLASS ACTIONS § 18:19 (5th ed.), but CNB counters with a treatise criticizing it, *see* JOSEPH M. MCLAUGHLIN, 2 MCLAUGHLIN ON CLASS ACTIONS § 6:30 (17th ed.).

Traditional res judicata in the form of claim preclusion bars the relitigation of claims where: "(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." *Pushard v. Bank of Am., N.A.*, 2017 ME 230, ¶ 20, 175 A.3d 103 (citation omitted). Class action judgments are binding on all members, representative or not. *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 379, 116 S. Ct. 873 (1996) ("There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation.") (quoting *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874, 104 S. Ct. 2794 (1984)) (quotation marks omitted).

"We begin with bedrock. To bring claim preclusion into play, a cause of action need not be a clone of the earlier cause of action." *Mass. Sch. of Law v. ABA*, 142 F.3d 26, 38 (1st Cir. 1998). Overdraft fees and NSF Fees are, at best, two sides of the same coin. Both CNB and Milwood were parties to the *Norwood* action. Claims specifically relating to NSF Fees could have been brought in addition to the claims about other types of overdraft fees which were actually litigated. That action was settled and a valid final judgment was entered. Under traditional res judicata principles, Milwood is barred from bringing the instant claim. *See Pushard*, 2017 ME at ¶ 20.

Courts applying the "identical factual predicate" test hold that class action settlement agreements may have preclusive effect on related claims "only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 1992)). But in application the test hinges on what is identified as the relevant

predicate, and on the degree of sameness is required for it to be viewed as identical. In *Hesse*, the court found that a settlement which dealt exclusively with specific, nationwide charges by a cell service provider to recoup federal fees did not preclude an action based on that same provider's surcharge in Washington state to recoup a state tax because, though both claims involve improperly billed government fees, the surcharges were different, were used to recoup different costs, and were alleged to be improper for different reasons. *Id.* at 591. As such, the court determined that the factual predicates of the two class actions were not identical and the first could not preclude the second. *Id.* First Circuit courts that have referred to this doctrine seem to apply a flexible analysis because they do not require the precluded claim to be duplicative of the initial one. Rather, claims may be relinquished so long as they arise from the same source, even if the claims themselves are separate and independent. In *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, the appellate court affirmed a district court's approval of a class action settlement, based on an action stating direct claims, which released all claims pertaining to a tender offer by a general partner in twenty-one limited partnerships to the limited partners of each, including certain derivative claims. 100 F.3d 1041 (1st Cir. 1996). The court held that though it was disputed whether or not those derivative claims were actually brought in the initial action, they "stemmed from problems with the tender offers" and thus the two suits shared a sufficiently "identical factual predicate" such that claims based on the derivative actions were releasable by the class action settlement. *Id.* at 1044. Likewise, in *Bezdek v. Vibram USA Inc.*, the district court, citing *City P'ship Co.*, approved a release provision in a class action settlement involving a shoe manufacturer as preclusive because it "cover[ed] only those claims or actions 'on the basis of, connected with, arising from, or in any way whatsoever relating to the purchase of FiveFingers footwear during the Class Period and the

12

claims alleged in the complaint,'" equating that broad language to the release of claims based on an identical factual predicate to that of the settlement. 79 F.Supp 3d 324, 348-49 (D. Mass. 2015).

Milwood maintains that the "factual predicate" of his claim is qualitatively different from the cause of action in *Norwood*. Essentially, he argues that the present suit is based on CNB's fee practices for checking an accountholder's balance and, finding it too low to draw from without an overdraft, rejecting the transaction. He contrasts this with the *Norwood* action, which states claims for fees charged for having actually overdrafted an account. Milwood's characterizations of the two actions "present distinctions without legal significance." *Reppert*, 359 F.3d at 57. The relevant "factual predicates" of both suits—fees charged by CNB related to overdraft transactions—are identical. The Release's language specifies that it covers all claims related to overdraft fee practices. *See* Supp'g S.M.F. ¶ 17; *Bezdek*, 79 F.Supp 3d at 349. Because both Milwood's NSF Fees and *Norwood*'s OD Fees stem from CNB's overdraft fee practices, the Release is preclusive against Milwood even under his proposed test. *See City P'ship Co.*, 100 F.3d 1041; *cf. Hesse*, 598 F.3d at 590.

## III.    Collateral Attacks on *Norwood* Are Rejected

This Court has already ruled on the Norwood Settlement and it may not be relitigated here. The finality of a ruling, including in the class action context, is a cornerstone of the judicial process that cuts across jurisdictions. After entry of a judgment which finds that due process protections were in place for a class, the issue is not subject to collateral attack. *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d at 145-146; *Epstein v. MCA, Inc.*, 179 F.3d 641, 648 (9th Cir. 1999) ("Simply put, the absent class members' due process right to adequate representation is protected not by collateral review, but by the certifying court initially, and thereafter by appeal."). First Circuit courts reject collateral attacks on the fairness and decency of a prior proceeding. *Nottingham*

*Partners v. Trans-Lux Corp.*, 925 F.2d at 33 (giving full faith and credit to Delaware court's denial of appellants' petition to exit class action settlement because that court had already afforded "all the prophylaxis which the Due Process Clause commands"). Even the cases Milwood cites from the Ninth and Second Circuits—*Hesse* and *Super Spuds*, respectively—disfavor such attacks. Under *Hesse*, collateral review is only appropriate where the lower court had not made any findings as to adequacy of representation in the class action. *See* 598 F.3d at 588. *Super Spuds* was an appeal from the order approving the class settlement and was thus the proper venue for questions of due process. *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9 (2d Cir. 1981).

Milwood's arguments as to the adequacy of his representation and notice in the *Norwood* action are inapposite. As part of its approval of the Norwood Settlement, the *Norwood* court specifically found that Norwood "adequately represented the Settlement Classes," that "the notice program . . . fully satisfied the requirements of due process and Rule 23," and that "the Settlement Agreement . . . [was] in all respects fair, reasonable, and adequate." (Supp'g S.M.F. ¶¶ 15-17); *see In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d at 146; *Epstein*, 179 F.3d at 648; *cf. Hesse*, 598 F.3d at 588. This suit is not an appeal from *Norwood*, it is a separate action. Threshold issues of due process were already decided by the *Norwood* court and have no place in this suit. *Cf. Super Spuds*, 660 F.2d at 16.

<u>CONCLUSION</u>

Based on the foregoing, the entry will be: Defendant CNB's motion for summary judgment is GRANTED.

SO ORDERED.

The Clerk is requested to enter this Order on the Docket, incorporating it by reference pursuant to M.R. Civ. P. 79(a).

14

Date:  **09/28/2021**

_____
Michael A. Duddy, Judge
Business & Consumer Docket

Entered on the docket:  09/28/2021